UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert Alm,

        Petitioner,               Court File No. 17-cv-4630 (SRN/LIB)

v.

                            **REPORT AND RECOMMENDATION**

David Paul,

        Respondent.

This matter came before the undersigned United States Magistrate Judge pursuant to a referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and upon Petitioner Robert Alm's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, [Docket No. 1].

For the reasons set forth below, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED** without prejudice.

## I.   BACKGROUND AND STATEMENT OF FACTS

On February 11, 2013, Petitioner was sentenced to a controlling term of 84 months' imprisonment for armed bank robbery and use of a firearm during the commission of a crime of violence; he is currently serving that sentence at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). (Petition, [Docket No. 1], 1; Peyla-Cossette Dec., [Docket No. 5], 2; Id. at Exh. A, [Docket No. 5-1], 3).

Petitioner has a projected release date of May 24, 2018. (Id.; Peyla-Cossette Dec., [Docket No. 5-1], 2). Under 18 U.S.C. § 3624(c)(1), the Bureau of Prisons ("BOP") may allow a prisoner to serve up to the final 12 months of his or her sentence in a residential reentry center

("RRC") in order to "afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." In addition, the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Because the Petition for Writ of Habeas Corpus presently before the Court involves Petitioner's belief that his refusal to take certain prescribed psychiatric medication has unlawfully denied him RRC placement, a history of Petitioner's psychiatric history as related in the record now before the Court is necessary.

In 2012, during the pretrial phase of his Federal criminal prosecution in the United States District Court for the Southern District of California for armed bank robbery, forensic psychologist Francisco Gomez diagnosed Petitioner with possible Bipolar Disorder Type II. (Petition, [Docket No. 1-1], 1-2; Id. at Exh. A, [Docket No. 1-2], 1).

On April 30, 2015, while serving his resulting sentence at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"), Petitioner was in a fight with another inmate and, as a result, he was placed into disciplinary segregation. (Petition, Exh. A, [Docket No. 1-2], 4, 6). At some point during his time at FCI Sheridan, a Dr. Horowitz diagnosed Petitioner with Bipolar Disorder Type I with Psychotic Features. (See, Petition, Exh. A, [Docket No. 1-2], 1). During his more than 30 days in disciplinary segregation, Plaintiff attempted suicide three times. (Petition, [Docket No. 1-1], 1; Id. at Exh. A, [Docket No. 1-2], 6). Plaintiff claims that he stabilized while on suicide watch, and he did not have further suicidal ideation. (Petition, [Docket No. 1-1], 2). Nevertheless, on July 9, 2015, he was transported to FMC Rochester in July 2015, where Dr. Bocanegra and/or Dr. McKenzie prescribed Petitioner Lithium, which is a mood stabilizer, and Risperdal, which is an antipsychotic. (Petition, [Docket No. 1-1], 2; Peyla-

Cossette Dec., Exh. C, [Docket No. 5-1], 11). Under protest, Petitioner took the prescribed medications. (Petition, Exh. A, [Docket No. 1-2], 6).

In July 2017, Petitioner began seeing Dr. Ivy, a psychiatrist at FMC Rochester, who weaned Petitioner off of the Risperdal. (Petition, Exh. A, [Docket No. 1-2], 6).

According to Petitioner, in August 2017, he was informed by his case manager that he would receive 4 months' RRC placement, to begin on January 27, 2018. (Petition, [Docket No. 1-1], 1).

Plaintiff contends that taking the Lithium "essentially lobotomized [him] and [he] was unable to voice [his] concerns and grievances effectively in writing." (Petition, [Docket No. 1-1], 2). On September 14, 2017, Petitioner began refusing to take his daily dose of Lithium, which at the time was being prescribed by Dr. Dionne Hart, a psychiatrist at FMC Rochester. (Petition, [Docket No. 1-1], 2; Id. at Exh. A, [Docket No. 1-2], 9).

Petitioner claims that since he began to refuse to take his Lithium, Dr. McKenzie has "attempt[ed] to sabotage" Petitioner's RRC placement. (Petition, [Docket No. 1-1], 2). For example, Petitioner asserts that on September 25, 2017, he read an email Dr. McKenzie had sent to a halfway house which Petitioner claims (1) suggested that Petitioner is a danger to himself and others when he does not take his Lithium and (2) otherwise attempted to persuade the halfway house not to take Petitioner. (Petition, [Docket No. 1-1], 2-3). Moreover, Petitioner claims that Dr. McKenzie informed him that his refusal to take the Lithium could result in Petitioner being denied any RRC placement. (Petition, Exh. A, [Docket No. 1-2], 1).

On September 26, 2017, Petitioner sent an email to Dr. Hart, in which he expressed his desire to be rediagnosed. (Petition, Exh. A, [Docket No. 1-2], 1). Petitioner asserted that his current diagnosis of Bipolar I with Psychotic Features is inaccurate because it is based

3

"exclusively on [his] behaviors from June 2015," which Petitioner asserts were caused by his extended confinement in disciplinary segregation, marijuana use, and his temporary belief at the time that "daydreams [provided] accurate information." (Id. at 1-3). Petitioner provided Dr. Hart with the citation to an article published by the American Medical Association about "SHU Syndrome," which is a temporary condition allegedly produced by extended periods of solitary confinement. (Id. at 1). Petitioner also challenged certain findings made in the context of Dr. Bocanegra's psychiatric evaluation of him in July 2015, especially with regards to his psychiatric history; Petitioner asserted to Dr. Hart that he has no history of mental illness. (Id. at 1-2, 4, 6). In addition, Petitioner detailed the benefits he had noticed since ceasing his Lithium, including better sleep, increased alertness, decreased lethargy, and increased enjoyment. (Id. at 7).

Petitioner also reported to Dr. Hart that Dr. McKenzie had stated that if Petitioner continued to refuse to take Lithium, Dr. McKenzie would civilly commit Petitioner, hold him indefinitely past his release date, revoke all of Petitioner's good conduct time, recommend to any future probation officer or outside psychiatrist that Petitioner remain on Lithium, and encourage any potential future halfway house not to accept him. (Petition, Exh. A, [Docket No. 1-2], 1). Petitioner asked Dr. Hart to issue a new Psychological Evaluation and Individualized Treatment Plan and engage a private psychiatrist outside of BOP employment to evaluate Petitioner's diagnosis and what medication, if any, Petitioner requires. (Id. at 7-8). Petitioner also asked Dr. Hart to "rewrite [his] psych file . . . to reflect this new, more accurate information contained in" the email. (Petition, Exh. A, [Docket No. 1-2], 7).

On September 27, 2017, Dr. Hart replied to Petitioner's messages, stating:

I'm happy to speak with you regarding your concerns at length during our next appointment. However, I will address a couple of your concerns here.

4

> You are currently diagnosed with bipolar disorder type 1 and prescribed treatment that you are currently refusing. Therefore by definition, you are non[-]compliant to recommended treatment. At this time, I don't have any new information based upon my review of your medical record or obtained from our two meetings that would warrant an amendment of your current diagnosis.
>
> If you continue to refuse treatment and demonstrate signs or symptoms [*sic*], I hope that you will agree to reconsider this situation. You will only be involuntary [*sic*] treated if you are a danger to yourself or others.
>
> I would be more than happy to review the AMA article you mentioned but "SHU syndrome" isn't currently a psychiatric diagnosis.
>
> Halfway house and good time aren't issues that fall under the discipline of psychiatry. Please discuss these concerns with the mental health unit team.

(Petition, Exh. A, [Docket No. 1-2], 9). Petitioner responded later that day, asserting the legitimacy of "SHU syndrome" and its applicability as an explanation for his behavior in June 2015. (Petition, Exh. A, [Docket No. 1-2], 9).

Petitioner's suitability for RRC placement was considered by BOP staff, and, on October 5, 2017, he was "recommended for 1 [to] 90 days of [RRC] placement." (Peyla-Cossette Dec., Exh. B, [Docket No. 5-1], 7).

On October 11, 2017, Petitioner filed his Petition for Writ of Habeas Corpus in this Court, naming David Paul, the Warden of FMC Rochester, as Respondent. ([Docket No. 1]). Therein, Petitioner asks the Court to (1) order Petitioner's reevaluation and, if necessary, his rediagnosis by an independent, outside psychiatrist and (2) "order the BOP to refrain from denying [Petitioner's RRC placement] on the grounds that [he] suffer[s] from a mental illness, or for refusing medication." (Petition, [Docket No. 1-1], 3).

A Summary Reentry Plan Progress Report dated October 12, 2017, reflects a recommendation of 91 to 120 days of RRC placement. (Id. at Exh. C, [Docket No. 5-1], 12).

Also on October 12, 2017, Petitioner filed an initial Request for an Administrative Remedy in which he requested additional RRC placement time. (Boldt Dec., [Docket No. 6], 4-5; Id. at Exh. B, [Docket No. 6-1], 7). More specifically, Petitioner requested:

> that a directive be issued mandating that I be allowed to go to [a] halfway house in San Diego, CA on my scheduled date of January 27, 2018. My case manager Mr. Kropp informed me that I would be put in for 4 months (120 days) halfway house to extend from January 27, 2018 to May 27, 2018, my final release date. However, Dr. []McKenzie and others are corresponding with the halfway house, using lies and exaggerations about my mental state, and the fact that I recently began refusing lithium, to dissuade the halfway house from accepting me. Thus, my Second Chance Act rights and liberty interest in obtaining adequate reentry time are being jeopardized and may be violated if there is no intervention by higher authorities to preserve my right to halfway house placement time. I respectfully request that you intervene accordingly . . . .

(Id. at Exh. C, [Docket No. 6-1], 11). Petitioner withdrew this Request for Administrative Remedy the following day. (Boldt Dec., [Docket No. 6], 5; Id. at Exh. C, [Docket No. 6-1], 10).

On or about October 16, 2017, Petitioner filed a second Request for an Administrative Remedy in which he requested psychological reevaluation by a private psychiatrist. (Boldt Dec., [Docket No. 6], 5; Id. at Exh. B, [Docket No. 6-1], 7; Id. at Exh. D, [Docket No. 6-1], 14). On October 25, 2017, the acting warden denied this Request, and informed Petitioner of his right to appeal the denial within 20 days. (Id. at 14). Petitioner has not appealed. (Boldt Dec., [Docket No. 6], 5-6).

On October 23, 2017, Petitioner filed a third Request for an Administrative Remedy; this time, Petitioner filed his Request directly with the regional office, which is permissible "when [an inmate] appeals a Discipline Hearing Officer report, challenges a BOP decision not originating with the Warden, or reasonably believes the issue is sensitive and his safety or wellbeing would be placed in danger is his request became known at the institution." (Boldt Dec., [Docket No. 6], 3, 6; Id. at Exh. B, [Docket No. 6-1], 8); see, also, 28 C.F.R. § 542.14(d).

6

The Request for Administrative Remedy was rejected for failure to submit his appeal or request in the proper format. (Boldt Dec., [Docket No. 6], 6). Petitioner was notified that he could resubmit his Request or appeal in the proper form within 10 days of the rejection notice, but Petitioner did not do so. (Boldt Dec., [Docket No. 6], 6).

On October 25, 2017, this Court issued an Order instructing Respondent to file an Answer to the Petition for a Writ of Habeas Corpus and affording Petitioner the opportunity to file a Reply to that answer if he so wished. ([Docket No. 3]). Respondent filed his Answer on November 8, 2017, along with Declarations in Support. ([Docket No. 4]). The time period in which Petitioner could file a Reply ended on November 22, 2017, and Petitioner filed no Reply with the Court.

## II.   DISCUSSION

Respondent's primary argument is that the Court should dismiss the Petition for Writ of Habeas Corpus because Petitioner has failed to exhaust administrative remedies. (Response, [Docket No. 4], 4-9). The administrative remedy process in place for inmates such as Petitioner involves four steps:  (1) informal resolution; then, if unsatisfied with the result, (2) filing a formal Request for Administrative Remedy with the warden of the institution; then, if unsatisfied with that result, (3) appeal to the Regional Director; and finally, if still unsatisfied, (4) appeal to the General Counsel at the Central Office. (Boldt Dec., [Docket No. 6], 3); see, also, Administrative Remedy Program, 28 C.F.R. 542.10, et seq. "Administrative remedies have been exhausted when the inmate either has heard from the General Counsel or once the General Counsel's time to reply has expired, including any extensions that may have been granted." Simon v. L. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, *3 (D. Minn. March 10, 2016).

It is well-established that a federal prisoner seeking relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2241 must first exhaust the administrative remedies available to him or her. See, Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court.").

Although the exhaustion requirement is not jurisdictional, see, Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007), it is generally enforced absent circumstances which justify an exception. See, e.g., Masri v. Watson, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891 (D. Minn. Feb. 17, 2017) (denying habeas petition for failure to exhaust all available administrative remedies); Knox v. United States, No. 16-cv-879 (WMW/KMM), 2016 WL 6022940 (D. Minn. Oct. 13, 2016) (same); Aguilar v. United States, No. 15-cv-487 (SRN/JSM), 2015 WL 5719166, *2 (D. Minn. Sept. 29, 2015) (noting that "habeas petitioners can be excused from the exhaustion requirement if proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose"). Moreover, the Eighth Circuit has held that a Federal District Court erred by considering the merits of a petition for a writ of habeas corpus when the petitioner "failed to demonstrate he had" properly exhausted his administrative remedies prior to seeking habeas corpus relief. See, United States v. Thompson, 297 Fed. Appx. 561, *1 (8th Cir. 2008).

The exceptions to the exhaustion requirement for habeas petitioners include when requiring a habeas petitioner to exhaust all available administrative remedies would be futile and

8

serve no useful purpose.[1] See, Aguilar, 2015 WL 5719166, at *2. In the case presently before the Court, however, Petitioner has not identified or asserted any reason why the administrative remedy process would be undoubtedly futile with respect to resolving the concerns expressed in his present Petition for Writ of Habeas Corpus. Petitioner has not asserted any circumstances which would warrant excusing him from the requirement that he exhaust the administrative remedies available to him prior to seeking habeas relief from this Court.

Rather, it is clear from the record now before the Court that Petitioner failed to make even a good faith effort to exhaust the available administrative remedies. First, the undersigned notes that Petitioner filed the present habeas Petition before he pursued any administrative remedies whatsoever. In addition, although Petitioner has since filed at least three Requests for Administrative Remedy which are related to the grounds he asserts in his Petition for Writ of Habeas Corpus, he withdrew the first of those Requests before it was resolved, he failed to timely appeal the second Request after the acting warden denied it, and he failed to refile the third Request after it was rejected for incorrect formatting. (See, Boldt Dec., [Docket No. 6], 3-6; Id. at Exh. B, [Docket No. 6-1], 7-8; Id. at Exh. C, [Docket No. 6-1], 10-11; Id. at Exh. D, [Docket No. 6-1], 14). Thus, Petitioner has failed to exhaust the available administrative remedies.

As already stated above, Petitioner did not submit any Reply to Respondent's arguments regarding exhaustion of administrative remedies. In light of the lack of opposition to this

---

[1] Courts have also excused the exhaustion requirement when the issues raised in the action are time-sensitive and may become moot without expeditious judicial resolution. See, Simon v. L. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, *3-4 (D. Minn. March 10, 2016). The undersigned is cognizant that Petitioner contends that he may be improperly denied release to RRC placement in January 2018. However, the record currently before the Court does not reflect that such a decision has actually been made as of this time. Because it is clear that the Petition, [Docket No. 1], should be dismissed without prejudice for failure to exhaust administrative remedies, the ripeness of the Petition is not discussed in detail herein. However, the lack of any evidence in the record now before the Court that Petitioner will not be released to RRC placement in January 2018 weighs against the time-sensitive nature of Petitioner's claims somehow excusing his failure to exhaust his available administrative remedies.

9

argument and considering the record currently before the Court, the undersigned cannot recommend that Petitioner be excused from the requirement that he exhaust his administrative remedies prior to seeking habeas relief in this Court.

Accordingly, the undersigned recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **denied**, and this action be **dismissed without prejudice**.

### III. CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED;** and

2. This action be **DISMISSED without prejudice.**


Dated: December 1, 2017

s/Leo I. Brisbois
The Honorable Leo I. Brisbois
United States Magistrate Judge

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).